## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION )<br><br>Plaintiff, )<br><br>v. )<br><br>JOMAR TRANSPORTATION, INC. d/b/a SEKO WORLDWIDE, )<br><br>Defendant. )<br>_____ ) | CIVIL ACTION NUMBER<br><br><br><br>**JURY TRIAL DEMANDED** |

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION            )
                                  )        CIVIL ACTION NUMBER
        Plaintiff,                )
                                  )
v.                                )
                                  )        **JURY TRIAL DEMANDED**
JOMAR TRANSPORTATION, INC.        )
d/b/a SEKO WORLDWIDE,             )
                                  )
        Defendant.                )
                                  )
_____      )

## COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex, and to provide appropriate relief to Charging Party, Janine Mayo ("Mayo"), who was adversely affected by such practices. The Plaintiff alleges that while employed with the Defendant, Jomar Transportation, Inc. doing business as Seko Worldwide (or "Defendant"), Mayo was subjected to a sexually hostile work environment and the Defendant failed to take effective remedial action to end the harassment.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) (Title VII), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 28 U.S.C. § 2000e-5(f)(1)and (3).

4.      At all relevant times, Defendant has continuously been a corporation doing business in the State of Georgia and the city of Forest Park, and has continuously had at least 15 employees.

5.      At all relevant times, Defendant has continuously been an employer

2

engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6.    More than 30 days prior to the institution of this lawsuit, the Charging Party filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant.  All conditions precedent to the institution of this lawsuit have been fulfilled.

7.    Beginning in 2007, Defendant engaged in unlawful employment practices, in violation of Section 703(a) and Section 704(a) of Title VII, 42 U.S.C. §§2000e-2(a) and 2000-3(a), by subjecting Mayo to repeated incidents of harassment which resulted in a sexually hostile work environment.

8.    Mayo was hired by Defendant in January 2007 as an International Manager and was later promoted to International Operations Supervisor.

9.    Throughout Mayo's employment, Defendant's owner and CEO, Mark Scanlan, regularly made comments and jokes about her breasts, e.g., "Good morning. What a nice set of tits," and "The girls are looking good today."

10.    Mark Scanlan fixated on Mayo's breasts from the time she was hired in 2007, and continued with comments and jokes about her breasts up until her resignation in 2011.    Scanlan's derogatory and humiliating comments about

3

Mayo's breasts were done in the presence of employees on a regular basis.

11.    At least one year prior to her resignation, Mark Scanlan also began a campaign of sending sexually inappropriate emails about Mayo's breasts to workers in the office.

12.    By way of example, Mark Scanlan sent an email to Mayo's co-workers regarding the size of Mayo's nipples; sent an email to the entire office stating that the best part of his job was being able to see the employee's breasts; and sent an email to the office about Mayo scorching her breast areolae on the grate of a smoker.

13.    Mark Scanlan engaged in other derogatory and harassing conduct towards Mayo including: sending Mayo a photo scan of a box of large adhesive pads, indicating that they were "Nipple Covers - For the Big Ones."

14.    For at least two years prior to Mayo's resignation, Mark Scanlan prominently displayed a pair of large rubber breasts placed next to a jar of Vaseline on his desk and credenza.

15.    On more than one occasion when Mayo entered Mark Scanlan's office to perform her job, Scanlan made comments comparing the rubber breasts to Mayo's.

16.    Mark Scanlan's conduct also included an inappropriate introduction of

4

Mayo to Seko Worldwide's new Chief Operating Officer ("COO") at a customer appreciation dinner in April 2011. Scanlan introduced Mayo as follows: "This is Janine. Have you ever seen a set of tits this big?" Scanlan then bent down to Mayo's waist and made hand gestures towards her breasts.

17.    As the Owner and CEO of Jomar Transportation, Inc., Mark Scanlan set the example for other male employees as to what behavior was acceptable in Defendant's workplace. Thus, beginning in or around September 2010, a male manager began sending a series of emails to the office staff referencing women's weight, vaginal insertions, and OBGYN appointments. In one email, the manager included an image of a coke bottle being inserted into a woman's vagina. In other emails, he mocked female employees for being late to work due to pregnancy, morning sickness, and doctor's visits to the gynecologist.

18.    Near the end of her employment, Mayo was sitting at her desk when Mark Scanlan bent towards her and got extremely close. Mayo quickly scooted back in her chair to avoid Scanlan's attempt to touch her.

19.    Due to Mark Scanlan's humiliating and derogatory behavior, Mayo tried to avoid Scanlan by walking in the other direction if she saw him coming or going outside and walking around the entire building to avoid contact with him.

20.    The totality of the offending conduct was sufficient to create a work

environment permeated with intimidation, ridicule and humiliation based on Mayo's sex, female.

21.    The totality of the offending conduct was sufficiently severe and pervasive to create a hostile work environment based on sex.

22.    Mayo first complained about Mark Scanlan's harassment in 2007 or 2008 during the first year of her employment to Edrena Scanlan, Defendant's Co-Owner and the management official responsible for receiving complaints of harassment for the company.  However, the offending conduct continued.

23.    Mayo complained to Edrena Scanlan at least two additional times about Mark Scanlan's conduct within her first two years of employment. However, the offending conduct did not stop.

24.    Soon after Mark Scanlan's inappropriate introduction of Mayo to the COO in April 2011, Mayo complained to her direct supervisor, Daniel Lumpert, whose response was "You know how Mark is."  Lumpert also failed to stop and prevent the harassment from recurring.

25.    In May 2011, Mayo complained again to Edrena Scanlan about Mark Scanlan's harassing conduct.

26.    On July 18, 2011, Mayo filed an EEOC charge against Defendant alleging sexual harassment.

6

27.    During all relevant times, Mark Scanlan was a major shareholder and Chief Executive Officer of Defendant.

28.    Defendant is vicariously liable for any harassing conduct attributable to Mark Scanlan because his knowledge of the harassment is imputed to the Defendant.

29.    Defendant is liable for the sexually hostile work environment as Edrena Scanlan and Daniel Lumpert also had knowledge of the harassment and yet failed to take prompt, effective remedial action to correct the harassing behavior.

30.    The effects of the practices complained of in paragraphs 7-29 above have been to deprive Mayo of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

31.    The unlawful employment practices complained of in paragraphs 7-29 above were intentional and were carried out with malice and/or reckless indifference to the federally protected rights of Mayo.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in sexual harassment against employees and engaging in any other

7

employment practice which discriminates on the basis of sex.

B.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant to make Mayo whole, who was adversely affected by Defendant's discriminatory conduct, by providing affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.      Order Defendant to make Mayo whole by providing compensation for non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain and suffering, anxiety, stress, and humiliation, in amounts to be determined at trial.

E.      Order Defendant to pay Mayo punitive damages for Defendant's malicious and reckless conduct described above, in amounts to be determined at trial.

F.      Grant such further relief as the Court deems necessary and proper.

G.      Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

8

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REEMS
Associate General Counsel

*9/20/2013*
Date

*s/ Robert K. Dawkins*
ROBERT K. DAWKINS
Regional Attorney
Georgia Bar No. 076206

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Atlanta District Office
100 Alabama Street, SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:  (404) 562-6818
Facsimile:  (404) 562-6905